UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEWITT GILMORE,

                      Plaintiff,

            -v-

SEAN COMBS, *et al.*,

                      Defendants.

24-CV-8440 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff DeWitt Gilmore, proceeding *pro se*, brings this action against Defendants Sean Combs and Bad Boy Entertainment LLC,[1] asserting claims of assault, battery, and intentional infliction of emotional distress ("IIED") arising from an event that Gilmore alleges took place in the summer of 1996 where Combs and his associates cornered, chased, and threatened Gilmore.

Before the Court is Defendants' motion to dismiss for insufficient process, Fed. R. Civ. P. 12(b)(4), insufficient service of process, Fed. R. Civ. P. 12(b)(5), and failure to state a claim, Fed. R. Civ. P. 12(b)(6), as well as Gilmore's motion for leave to amend his complaint. For the

---

[1] Defendants note in their memorandum in support of their motion to dismiss that Gilmore "incorrectly" identified Bad Boy Entertainment LLC as Bad Boy Entertainment, Inc. (ECF No. 14 at 8.) The Court uses the entity's official name.

This discrepancy in naming also presents another problem: Gilmore did not properly allege that complete diversity existed in this action brought pursuant to 28 U.S.C. § 1332, as an LLC has the citizenship of each of its members, which Gilmore did not plead. *See ICON MW, LLC v. Hofmeister*, 950 F. Supp. 2d 544, 546 (S.D.N.Y. 2013) (citing *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012)). However, Defendants filed a Rule 7.1 Statement that states: "Bad Boy Entertainment LLC is a citizen of New York, California, and Florida." (ECF No. 17.) Because Gilmore is a citizen of Georgia (*see* ECF No. 1 at 1), and neither side alleges that Combs was domiciled in Georgia at the time of this filing, the Court determines that complete diversity exists, and it thus has subject matter jurisdiction over this action.

reasons that follow, Defendants' motion pursuant to Federal Rule 12(b)(6) is granted and Gilmore's motion for leave to amend is denied.

I.     **Background**

   A.     **Factual Background**

Unless otherwise noted, the facts are drawn from Gilmore's complaint (ECF No. 1 ("Compl.")) and his brief in opposition to Defendants' motion to dismiss (ECF No. 30 ("Opp."))[2] and are presumed true for the purpose of resolving this motion. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

Plaintiff DeWitt Gilmore is a self-described "author, entrepreneur, and public figure" who lives in Atlanta, Georgia. (Compl. ¶ 3.) Defendant Sean Combs is an "entertainer, entrepreneur, and public figure" currently living in New York. (*Id.* ¶ 4.)

On a summer night in 1996, Gilmore was in a vehicle parked near a New York City club with two friends, "Lance Calfe and Rico," when "Combs and his associates pulled up in a gold convertible." (*Id.* ¶¶ 2, 5-6.) Gilmore alleges that "Combs initiated a verbal confrontation with [Gilmore], taunting him with derogatory language," including the question "What's up, bitch?" and threatening Gilmore with violence. (*Id.* ¶ 7.) More vehicles joined Combs "carrying armed associates" who blocked the path of Gilmore's car and began firing shots. (*See id.* ¶¶ 8-9; ECF No. 3 ("Calfe Dec.") at 1.) Gilmore and his friends were then "aggressively chased through the dark city streets," only managing to escape "by accelerating through traffic" and "maneuvering through red lights." (Compl. ¶ 9; Calfe Dec. at 1.)

---

   [2] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Because Gilmore is proceeding *pro se*, the Court considers facts raised in his opposition to the motion to dismiss and attached exhibits.

Gilmore "recently reconnected" with Calfe, sparking a conversation that "brought forth new insight" for Gilmore about what happened during the 1996 incident with Combs. (Compl. ¶ 11.) Gilmore alleges that this experience with Combs and his associates caused him "significant emotional and psychological distress, a fear of retaliation, and harm to his reputation," and that he had "safety concerns" about bringing this lawsuit before November 2024. (*Id.* ¶¶ 10-11.)

### B.     Procedural History

Gilmore commenced this action on November 3, 2024, by filing a complaint (Compl.), and a declaration by Lance Calfe (Calfe Dec.). Gilmore subsequently filed a "motion to deem service effective and deny defendant's motion to dismiss" on February 14, 2025. (ECF No. 9 (capitalization altered).) Defendants moved to dismiss the complaint on February 21, 2025 (ECF No. 13) and also filed a memorandum in support of their motion (ECF No. 14 ("Mem.")). Gilmore filed two more oppositions to the motion to dismiss (ECF Nos. 21, 30 ("Opp.")) and moved to withdraw the document at Docket Number 9 (ECF No. 31), which the Court granted (ECF No. 34). The Court stated in that Order that it would consider Gilmore's filing at Docket Number 30 as the operative opposition brief. (*Id.*) However, giving Gilmore the special solicitude afforded to *pro se* litigants, the Court also takes notice of additional facts pleaded in the filing at Docket Number 21 where relevant.

On April 9, 2025, Gilmore filed two documents asking that the Court take notice of the criminal prosecution of Combs and the allegations against him in those proceedings. (ECF Nos. 35, 36.) And on April 29, 2025, Gilmore moved for leave to amend his complaint (ECF No. 37) and filed a "notice of supplemental authority" again asking the Court to take notice of the criminal proceedings (ECF No. 38). Without being granted leave to amend his complaint, Gilmore filed an amended complaint on May 1, 2025. (ECF No. 40.) The amended complaint

3

largely mirrors the allegations in the original complaint and adds details about the unrelated alleged assault of Cassandra Ventura in 2016. (*See id.* at 3.)

## II.    Legal Standard[3]

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Gilmore is litigating his case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

---

[3] Because the Court reaches only Defendants' motion for failure to state a claim, it discusses the relevant legal standard of only Federal Rule 12(b)(6).

**III.    Discussion**

Defendants move to dismiss Gilmore's action for failure to state a claim first and foremost because Gilmore's state tort law claims are time-barred.  (*See* Mem. at 14.)  Because this event occurred over twenty-eight years ago, and Gilmore has not identified any basis for tolling the statute of limitations on his claims, the Court agrees.

The New York statute of limitations for assault, battery, and IIED is one year.  N.Y. C.P.L.R. § 215(3); *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007).  All three of these torts "accrue on the date of the alleged incident." *Tchatat v. City of New York*, No. 14-CV-2385, 2015 WL 5091197, at *14 (S.D.N.Y. Aug. 28, 2015).  Thus, because the alleged interaction with Combs occurred in the summer of 1996, there is no question that Gilmore's claims have far exceeded the limitations period.

Gilmore admits that his claims exceed "the usual statute of limitations," but argues that the Court should toll the limitations period due to "intimidation and safety concerns" and newly corroborated evidence.  (Compl. ¶ 11; *see also* Opp. at 1-2.)  It is the plaintiff's burden "to establish that the limitations period should be tolled." *Overall v. Est. of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995).  And New York courts "construe[] tolling doctrines as narrowly as possible," *id.*, respecting the fact that statutes of limitations "reflect a legislative value judgment striking the appropriate balance between the interests promoted by the statute and countervailing interests of repose." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260 (2d Cir. 1997) (cleaned up).  Because Gilmore's allegations of intimidation raise questions of equitable estoppel, retaliation tolling, and duress tolling, the Court addresses each theory separately.

"[E]quitable estoppel applies when a defendant wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), *aff'd*, No. 21-

5

552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (summary order) (cleaned up).  Gilmore admits that Defendants did not actively conceal information giving rise to his claim.  (*See* Opp. at 2.) He also fails to allege facts that would constitute "threats" or "other misconduct."  Gilmore does not identify any communication with either Defendant after the 1996 incident.  Indeed, Gilmore has not alleged that Defendants even knew his identity until this lawsuit was filed in 2024.

Gilmore does state that "Combs' documented pattern of violent retaliation within the entertainment industry created an environment of fear" and "Combs' known involvement in assaults, intimidation tactics, and cover-ups discouraged victims and witnesses from speaking out."  (Opp. at 1-2.)  But these allegations at most suggest that Combs's actions chilled the "entertainment industry['s]" willingness to sue Defendants, not that Combs prevented Gilmore specifically from filing this suit.  And "equitable estoppel is only appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not a community at large."  *Roeder*, 523 F. Supp. 3d at 619 (quotation marks omitted).

Gilmore also filed several additional documents after this motion was fully briefed, urging the Court to take notice of the criminal prosecution of Combs and the allegations against him.  (*See* ECF Nos. 35, 36, 38.)  However, even if it were proper to take notice of allegations in an ongoing case where a criminal defendant is presumed innocent, these allegations would at most show threats of violence against other individuals, not Gilmore.  Thus, Gilmore's allegations of general fear and intimidation, or threats of violence against others, cannot trigger equitable estoppel.

Gilmore cannot succeed on his theory of tolling for fear of retaliation, either.  At least one court in this District has recognized the fear of retaliation as a basis for equitable tolling of a

6

statute of limitations period in the context of a claim brought by an inmate pursuant to 42 U.S.C. § 1983. *See Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811, at *9 (S.D.N.Y. Sept. 30, 2016) (applying federal tolling law). But that holding was based upon the reasoning that correction officers exert "substantial control" over an inmate's daily life and so "the specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control." *Id.* at *11. Gilmore has not alleged a similar relationship with either Defendant.

Neither is duress tolling appropriate. "'Duress' involves both threats or force by the defendant, and the submission of the plaintiff's free will to those threats. Both elements of duress must continue in order for a duress-based tort to persist as a 'continuous wrong.'" *Overall*, 52 F.3d at 404. Gilmore's assault and battery claims would not qualify for duress tolling because they are "distinct, non-continuous wrongs." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019) (quotation marks omitted). And further, Gilmore has not identified any specific instances that would constitute ongoing duress. Gilmore explains that he feared bringing this action before now because Combs and his associates created "a longstanding culture of intimidation," including "documented incidents of violence" (Opp. at 1); one of Combs's former bodyguards had "publicly testified to violent gang affiliations [and] physical assaults" (*id.*); and Defendants "wielded significant influence in the entertainment industry" (ECF No. 21 at 1). But these vague allegations, which would not seem to impact Gilmore more than they would anyone else, do not rise to the level of duress. *See Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370, 371 (2d Dep't 1994) (rejecting a plaintiff's duress tolling argument when she "failed to specify any acts by the defendant" that rose to the level of duress). And tolling is not available for "general claims of psychological stress, even when allegedly

caused by defendant." *See Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554, at *1 (N.Y. Sup. Ct. Apr. 22, 2005).

Finally, neither newly found nor newly corroborated evidence, such as Gilmore's conversation with Calfe, a friend who was with him during the 1996 incident, provides the Court grounds to toll a statute of limitations. New York courts have not recognized a tolling doctrine for newly discovered evidence or corroboration, and this Court may not unilaterally decide otherwise. *See also Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (declining to apply equitable estoppel when a plaintiff uncovered "more persuasive evidence" rather than a "newly developed awareness of a previously concealed cause of action").

## IV. Leave to Amend

The Second Circuit has made clear that "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, a Court need not grant leave to amend when amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Because Gilmore's claims are unquestionably time-barred, and he has alleged no facts either in his original complaint (Compl.), his multiple briefs in opposition (ECF Nos. 9, 21, 30), his latest motion for leave to amend (ECF No. 37), or the amended complaint he filed without leave of the Court (ECF No. 40), that could support a colorable basis for equitable estoppel or tolling, the Court declines to grant him leave to amend his complaint on the ground of futility. *See Parker v. N.Y. State Div. of Parole*, No. 23-CV-10267, 2024 WL 3237916, at *5-6 (S.D.N.Y. June 27, 2024) (declining to grant leave to amend when a *pro se* plaintiff failed to allege facts that could plausibly give rise to equitable estoppel on a time-barred claim).

## V.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's motion for leave to amend is DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions at Docket Numbers 9, 13, and 37, to enter judgment of dismissal with prejudice, and to close this case.

SO ORDERED.

Dated: May 16, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

9